161169 Samsung Electronics v. Prisua Engineering Corp. 161169 Samsung Electronics v. Prisua Engineering Corp.  We submit that the Board's holding of unpatentability of Claim 11 under Section 103 is enough to dispose of this appeal. The Board had no trouble construing the limitations of Claim 11, including the digital processing unit limitation. The Board had no trouble applying the prior art to Claim 11 and concluding it was unpatentable. Yet Claims 1 through 4 and 8, which we submit are, for purposes of this appeal, identical to Claim 11, were held to not be unpatentable on the basis that the Board could not ascertain the proper scope of those claims. We submit that's an untenable holding in light of its finding as to Claim 11 and on that basis alone, the Board's decision as to Claims 1 through 4 and 8 should be vacated and this case should be remanded for application of the prior art to those claims. But let's just take Claim 1 versus Claim 11. Claim 1 is an apparatus claim. Claim 2, Claim 11 is a method claim. Yes, correct. And the Board said, okay, prior art reads on Claim 11, but we can't do the same thing for Claim 1. So you want to get into the reasons for that. I mean, you've made the bold claim, which is the two can't be differentiated for purposes of invalidity. That's correct. You make a pretty bold argument in your briefs with regard to statutory construction, but you make an alternative argument, which is more grounded in the claim language. Correct. So let me start with the claim language point. The basis of the Board's decision to not apply the prior art to Claims 1 through 4 and 8 was based on the digital processing unit limitation. That exact claim element is in Claim 11 as well. Twelve pages later in the opinion, the Board approaches Claim 11, approaches that limitation, construes that limitation, has no difficulty construing it. And says that it's not a 112.6. Doesn't even mention 112.6 in that context and applies the prior art and finds that it's met. Yet twelve pages earlier, it finds that exact same element in Claims 1 through 4 and 8 is unconstruable because it's 112.6 lacking corresponding structure. An argument that neither party raised below and that in fact in the appeal of Claim 11 to this Court is not raised as an issue on appeal. So we would submit that is an issue that is now decided for purposes of this case. And given this Court's clear mandate that the same claim term appearing in different claims of patent is presumed to mean the same thing. There's no argument they mean different things. But the 112.6 issue and the question of whether indefiniteness means even in the IPXL context that the claim can't be construed are two separate grounds it seems to me. Two separate issues. So what do you say about the IPXL type indefiniteness leads to a conclusion that the claim can't be construed and if the claim can't be construed, then the Board cannot get into the 102.103 issue on IPR. Yes, so our position on that is the history of this Court's precedent makes pretty clear that an indefiniteness finding does not per se block the Court from looking at the claim. And you mean Collier? Collier and other cases, Standard Oil versus American Sandman, and there are other cases as well. And it seems pretty clear that what the Court is suggesting. I'm curious about the other cases. I saw those two. Are there others you'd like to call our attention to? Well, there's also the Vibrant Media case out of the PTAB. That's the PTAB case. Affirmed by this Court. Rule 36. True. Are there any other cases? Off the top of my head, I don't have other cases. But the point here is, the standard seems to be, are we speculating about the scope of the claim? There's no speculation needed with respect to an IPXL indefiniteness finding as to a claim. All the Court has said there is there's a technical violation with respect to mixing two subject classes. The Board had no trouble finding that the Prior Art Citric reference taught the method of Claim 11. It's not, doesn't require any speculation to suggest or to apply that reference to the other claims. But isn't the rationale of the IPXL indefiniteness, if that's what it is, isn't the rationale that an infringer can't tell whether the infringer is infringing? So the rationale is that the infringer doesn't know whether it is the, for example, the possessing of the apparatus or the using of the apparatus that constitutes an act of infringement. So for purposes of validity... Why isn't that a form of making the construction impossible? Because you can't tell what the proper construction is. Well, you know that it's one or the other or both. It's either the apparatus, the method, or some combination. And that, I don't think it requires any speculation. So your argument is that you can analyze both possibilities and determine if both possibilities would lead to invalidity, then it's okay to go ahead with invalidity. Yes. But wouldn't it be true in ordinary indefiniteness if you decided there's a finite number of possible interpretations of a claim, you just tick off all of the different interpretations and you say, okay, well, I can make an invalidity determination as to all of them and then I don't have to worry about indefiniteness? I think that a finite number of possibilities is exactly what, for example, Collier was talking about, where the court said, look, we're going to accept a view of the claim that it is an aggregate claim and we're going to analyze it that way and we can conclude it's obvious in view of that. And I do think there are indefiniteness situations where, for example, the claim might be indefinite at the outer edges, but you know what it means in the middle. If you have a reference that meets it in the middle, you have perhaps alternative issues. You have 102, 103, as well as 112 as to that claim. I don't think it's an impossibility. And the cases that talk about approaching these claims use the term speculation. Are we speculating? I think having- You're not drawing the line and saying this case can be resolved limited only to the narrow 112 issues of IPXL. You're saying that even in the greater number of cases which are based on insolubly ambiguous could also arguably be resolved under 102, 103. Sure. If you're presented with a finite number of issues where you know what they are, I think that's right. So what does that do to the estoppel we were talking about in the prior case? If you've got indefiniteness claims before a district court, is a defendant arguably going to be stopped from not having raised that as an IPR? So that they could have been played in as part of the 102, 103 analysis? Well, I think that's in part going to depend on what the holding of the ultimate outcome of this issue is. For example, in this case or other cases that may be coming up, I mean, is 112 indefiniteness a viable issue on which the board can rule in an IPR? We submit that it is. But if that's true, then doesn't that, as the Chief Judge has asked, doesn't that mean that we've suddenly expanded the scope of potential estoppel rather dramatically? Well, our argument is not that every issue is on the table. Our argument is, in this case, the board, through its claim construction power to analyze 102 and 103 on its own, found two 112 indefiniteness issues with respect to claims one through four and eight. If the board has the power to reach those issues, which it seems to in connection with its claim construction powers, then it should have the power to cancel the claims on those bases. If that's true. Are you arguing that it's a matter of power or a matter of obligation? It's both. They have the power to do it through their power to construe the claims. And 318A is a grant by Congress to the board to rule on patentability of any, in fact, as the Supreme Court has said, all challenge claims in the final written decision. Does your argument, does your appeal turn on our agreeing with you that 318A is a broader scope? So we have offered alternative positions. The position I started with was that the invalidity finding is to claim 11 means that the decision to not reach 102 and 103 on claims one through four and 11 must be vacated and remanded. That does not depend on the second issue, the second argument, which is, alternatively, the board here found these claims to have two indefiniteness defects. Those additional defects. So it must be vacated and remanded as a matter of claim construction? Well, as a matter of claim construction on the digital processing unit limitation, the board never actually said it couldn't reach the IPXL issue. It merely said because there's this 112.6 issue, we can't reach claims one through four. I don't understand that distinction. They said they couldn't do it because they couldn't figure out the limits. The digital processing unit limitation was the sole basis for their reason not to reach one through four and eight. So that is a claim construction issue, and we would argue it's settled by virtue of what happened with claim 11, and this matter should be sent back. But there is an alternative argument, which is, given the board's findings of indefiniteness here, this court should vacate, send the case back, and instruct the board to find those claims unpatentable under section 112 by virtue of section 318A. Now, you've argued that claim 11 essentially answers the question with respect to 112.6 because that's inconsistent with the board's analysis of claims one and then four through eight. But even if they're inconsistent, and they may well be, that doesn't necessarily mean the claim 11 analysis was correct and the claim one analysis was wrong. Why isn't it the case that one of them may be wrong, but it may be claim 11? You have to win on the question, on the substantive question of whether this is really a 112.6 claim. You can't win simply by pointing to claim 11 and saying, aha, we win. Two points. Well, actually, three. One. But you would agree with that, right? With what I just said? Well, not now, because there was an appeal as to claim 11, and the patent owner hasn't challenged the construction of digital processing units. So I would argue that matter is settled in this case. So that's response one. Response two, we've briefed this issue. We do not think that the board's finding that digital processing unit is a means plus function element is supported in the record here. No one raised that issue. The only evidence the board had was the testimony and the argument by the patent owner that the digital processing unit connoted structure was known to those of skill in the art. Means was not used in this particular element, so there's a presumption it doesn't apply. And means, in fact, was used with respect to other elements in the claim, which would suggest the patent owner here knew how to use the term when they wanted to. So under any number of possibilities here, I would argue that the holdings on 1 through 4 and 8 cannot stand. Can I just go back to the breadth of what we're advocating here? Because I can understand we could cabin off the kind of 112 IPXL kinds of cases, and those may be in a different box. But I'm stuck on the insolubly ambiguous. And your answer to that seemed to be, well, if it's insolubly ambiguous, you might say there's a finite, there are 30 different ways. So how does the board approach that? There are 30 different ways that this claim could arguably construed, and we have to analyze each of those against the prior art. That just doesn't seem to me what was contemplated in terms of 102, 103 analysis, because that's what the board would have to do, right? Am I missing something? If there are 20 ways, you can say, we all agree it's insolubly ambiguous, but there are 20 alternatives that could be in the claim scope. You have to analyze each one of those? So first, we are operating now under the Nautilus regime, which is an even broader regime, not the narrow or insolubly ambiguous regime. In that regime, I think it's much harder to make the argument, because I think there, just by saying insolubly ambiguous, would suggest that there is no meaning conceivable to that claim. We're now in a different regime where, in fact, you may have claim terms that the meaning may be plainly understood in the center, and there may be some debate about the outer edges of the claim. I think that's an example where there wouldn't be speculation, which seems to be the standard the courts and the PTAB are applying. Am I being required to speculate here as to the scope of that claim? I think the IPXL example is a simple one, because it doesn't require any speculation, especially in this case. You're talking about two options, and that's it. It's an apparatus or a method of using the apparatus. So we don't have to reach the other question? I don't think you have to reach that here, no. And that's why I started with, in this case, the finding of invalidity as to Claim 11 is dispositive. We would submit. But I do understand the court's concern of jumping out into how many is enough. But that may be something that's left to the development of the law. I think it's a fair point here to say, in this case, there's nothing that would have precluded the board from applying the prior art under the IPXL side of this. If the court has no further questions, I'd like to reserve the remainder of my time for Thank you. Good morning, and may it please the court. Your Honor, the IPR statute, section 311B, states, quote, A petitioner in an inter-party's review may request to cancel as unpatentable one or more claims of a patent only on a ground that could be raised under section 102 or section 103 and only on the basis of prior art consisting of patents and printed publications, end quote. So Samsung, rather boldly, I would even say blatantly, has, I mean, that's a very clear prohibition on what a petitioner can ask to be canceled as unpatentable. No, but let's assume we are not talking about including 112 issues under what the board can, you can raise in your petition as being the basis for the validity. Let's assume we're talking about a narrower scope, which I think was what most of the discussion between us and Mr. Rainey was, right? So we're talking about where you use the 112 as a prohibition saying that you can't reach, we're all talking about doing it under 102 or 103, as happened with claim 11. We're just deciding whether the board was correct to say we can't reach that issue because we've got a 112 problem. That's a little bit different, not as nearly a broad swath of statutory regime, right? Well, Your Honor, what I wanted to start with was just that we observe here that the statute clearly prohibits what a petitioner in an IPR can request to cancel as unpatentable regarding. Okay, but let's assume we're talking about 102 and 103 here and it's just whether the path includes something in the nature of the endeavor. But they've also requested completely separately that these claims be canceled under 112 only. Yes. And that violates the clear wording of the statute. I'm willing to move on from that. They did it in below and they're doing it here. So with respect to the application of the art, the problem with Samson's argument, I believe, on this point is they want to say that there is a class of indefiniteness called IPXL indefiniteness. And that is a special kind of indefiniteness that you can apply the art to. There may be other kinds of indefiniteness, according to them, that you can apply art to, but with this particular kind of indefiniteness, you can. This is the gist of their argument on this point. And the problem, here's the problem. IPXL was the first case, IPXL, where this court addressed the issue of whether mixing apparatus elements and method steps in a single claim renders a claim indefinite. In fact, if you look at the IPXL decision on this point, it noted when it started its discussion that it was an issue of first impression for the court. And it said, but it's not an issue of first impression for the board. And this court went straight to the board, the board's decision in ex parte liel. Ex parte liel had found in 1990, apparently for the first time ever, had found a claim to be indefinite for mixing in one claim apparatus elements and method elements. So when this court in IPXL enunciated that claims could be found indefinite on this basis, the primary legal foundation, the precedential support for this court's decision in IPXL was ex parte liel. That's the number one and primary case cited in this court's reasoning on that subject. Now, if we go to ex parte liel, what we see there is that it has a discussion, ex parte liel was an appeal to the board of an examiner rejection. There was a rejection on indefiniteness, and there was a rejection on anticipation. The board addressed the rejection on indefiniteness first, and there it announced that the claim was indefinite because it mixed apparatus and method steps. And then it turned to the anticipation rejection. And I'm going to quote from ex parte liel's treatment of that. It's very short. Quote, with regard to the examiner's rejection of appealed claims, blah, blah, blah, under 35 U.S.C. 102B as anticipated by prior reference, it is our view that since the appealed claims are indefinite and indeterminate in scope for the reasons stated supra, it is not possible to apply the prior art to these claims in deciding patentability without disregarding portions of the express wording of the claims and thus resorting to speculation and conjecture. Can I just ask you about that? I could understand the argument if I take Mr. Rainey's point. We're no longer in their insolubly ambiguous land. But if the court can't construe it because these terms in claim one had five different potential meanings and we don't know which one, I get that. But I'm looking at blue brief six through seven, which has a chart comparing claims one and claims 11. So this is a kind of pedestrian question. But if I'm just sitting there as the board trying to do the analysis I did at claim 11, why couldn't I do the same analysis and application of the prior art to claim one? Just looking at this claim language in both of those, it doesn't seem hard or certainly not impossible to notwithstanding that there might be problems on indefiniteness because it mixes this stuff out because of the confusions of infringement. Why, if you're a board examiner or a PTAP judge, why couldn't you apply the same analysis with regard to prior art claim 11 to claim one? First of all, Your Honor, there are distinct and material differences between claim 11 and claim one. Claim one has an additional limitation that's completely not present in claim 11. And then claims two through four and eight are dependent claims, dependent on claim one. A series of additional limitations that aren't in claim 11. So the idea that these are identical is just not true. If you look at the chart, for example, on page six of the brief, you see that halfway on the page there's a claim one limitation to an image display device that's not present in claim 11. Okay, but the board made none of that analysis. They weren't differentiating claim one and claim 11 based looking at the prior art and these claims are different and so forth. They didn't go there, right? The board didn't do that. Well, they did not apply the art to claim one because they held that Samsung did not meet its burden of giving them a satisfactory claim construction for claim one. Now, respectfully, I want to get back to my point about ex parte lial because this is the case. This is the seminal case that created, that this court in IPXL followed for creating IPXL indefiniteness. This is the seminal case. In that case, they reversed the examiner's rejection on anticipation because they said they couldn't reach it because of the indefiniteness problem. So the idea that they're advancing that IPXL is a special type of indefiniteness that you can't apply the art to and do a 102 or 103 analysis is completely at odds with the first case ever on the subject that created the IPXL rule. Now, even if that's correct, a correct characterization of the Lyle case, it seems to me one of the problems for us is that that's not the analysis that the board used in this case because the board in this case, and I'm looking at appendix 20, said that we disagree with petitioner that we're able to address patentability of claim one and the reason they give is because of the 112.6 problem that the board perceived, at least at this portion of the opinion, with the language of the digital processing unit limitation. So it would seem to me that we would be departing from or adding to the analysis of the board if we were to say, and moreover, quite apart from 112.6 and quite apart from the correctness or non-correctness of that analysis, there is a problem with the indefiniteness of the 102 and 103 issues. How can we do that without the boards having already told us that that was the basis for the rule? Well, Your Honor, I believe that you were right when you said in your earlier question that there were two reasons that the board said it couldn't construe claim one. One, it was the IPXL issue and the second was the means plus function issue. If I said that, I don't recall saying it, but if I said that, then I misspoke because I read the board as having only decided this on the 112.6 issue. Now, if there's a place where the board has gone on and discussed and has made the point that you are citing the Lyle case for, I didn't see it. Well, Your Honor, they spent five pages here in this. You're looking at Appendix 20. This is the final written decision. The previous four or five pages are all going over the IPXL discussion. Right. Then they conclude that they disagree with the petitioner that we were able to address patentability of claim one. The reason they give is because of the 112.6. Well, they say both, I believe, Your Honor. They say even if one were to contend that claim one is an apparatus claim whose limitations are merely written in functional language, the petition lacks the analysis required by the regulation. For example, as we stated in the decision on institution, the digital processing unit limitation invokes 112.6. You're hanging your argument on the for example? The even if. They're saying both. They're saying... The even if is not directed, as I read it, to the IPXL issue. I don't see where the tie-in there is because they refer to the regulation, but that's not specific to IPXL. Your Honor, it's also not just me saying it. The whole appeal was predicated on asking the court to have the board cancel these claims as indefinite under 112 because of the IPXL finding. Their appeal interprets this as the board making... My colleague referred to two... He said the board found two indefiniteness defects, as he put it. IPXL being one and the digital processing unit 112.6 being the second. So their whole appeal is saying there are two problems that the board found, and this court should authorize the board to cancel the claims for those two indefiniteness problems. So you're reading... Are you with us on page appendix 20? Yes, Your Honor. So you're reading that first sentence as sort of being... Should have been really at the end of the paragraph preceding because that was their wrap-up of their conclusion of the IPXL issue. And then in particular, you're kind of reading of in the alternative. That's a very fair characterization of how I believe it's properly understood. And that's how, if you read their brief, their brief is predicated on saying, issue number one, board found the claims IPXL indefinite, board should be able to cancel under 112. What happens if we conclude that the board was incorrect on the 112.6 means plus function, that this was not a means plus function claim? I think for them to win, they have to win both arguments. They don't win by just winning the DPU argument because, as they've acknowledged, the board's determination that they failed to carry their burden was based upon two grounds. One, they didn't show how the board could destroy the claim because of the apparatus method issue that the board raised. And the second being the DPU issue. So they have to over, so they have to, they have to, and they haven't, and this is the key point, they haven't, with respect to DPU, they've come in here and said, well, the board would get it all wrong about the DPU being a means plus function claim. But they have not done that with respect to the first, what they call, indefinite defect. They have not said the board got it wrong on IPXL. In fact, they've latched onto that and want cancellation under 112 because of that. How do you square the treatment of the DPU limitation, as you call it, in Claims 1 and Claim 11? Well, Claim 11 is... Can you square the two? I believe they can be squared. How would you do that? I believe that Claim 11 is a method claim, and the claim language where you find that using the DPU. It's not expressed as in an apparatus claim where it's a structural component. Means plus function is a structural component. You typically have the word for in there, and you don't have that. You don't have it in Claim 1. You don't have the word for in Claim 1. The board is sort of implying it. But in Claim 11, where it's just a method claim, you don't have that. The step is using the DPU. So I think for that reason, they're not identical issues. They're not identical issues. And another problem I think that they have is when you look at the board's discussion of here in this whole case, in Claim 11, the board recites that... They say when they discuss the Claim 11 discussion of digital processing unit, they say that petitioner... Will you want to give us the page? I'll find that for you. Sorry. Okay. On Appendix 35. Here you have... Here you have petition... Here's the board discussing the petitioner's argument on this term in Claim 11. And they're saying at the second full paragraph, petitioner counters that the digital processing unit is not defined in the 591 patent, has no special meaning. Well, now they're coming in here saying, well, the patent owner, the inventor testified at deposition, I believe is what the reference is to, that digital processing unit does have a special meaning to those of skill in the art and connotes sufficient structure. And that's why we didn't think it was means most function. But yet, so now they want to say in this court, the patent owner was right. It has a special meaning. But when they briefed this to the board and claimed the context of Claim 11, they said it didn't have a special meaning. So they're hard to follow exactly because the positions shift so frequently here. They're not consistent. Well, they could have taken it. If they haven't appealed that position below, they're free to argue. So they are not, you're saying they're somehow foreclosed from making some argument here on appeal? I'm just saying they're arguing now that the DPU, because the DPU was not found to be means most function in Claim 11, it shouldn't be found that way in Claim 1. But yet they argued in connection with Claim 11 that the term had no special meaning. And now their argument for the error on Claim 1 is that it has a special meaning. And connotes sufficient structure to win a skill in the art and wouldn't be a means plus function subject to 112 sex treatment. So they argue different things when they see an advantage. I'd like to, I don't think that these issues really, you know, the issue of whether or not, you know, the board doesn't have the power to cancel under 112. So just like in the Google case from this court, you know, this court said the board cannot declare patents indefinite in an IPR. So we've expressed no view on it. In the very recent Neptune generics case, a party argued that the board ought to be empowered to cancel a claim in an IPR as unpatentable under Section 101. And this court, this is from May of this year, I believe, didn't get into whether it was or was not subject matter eligible under 101. It just said, we accordingly can't go there. We express no view on it. The same, this court doesn't need to get into whether or not there's the 112 issues in this case. They're arguing that the board had the power to cancel under 112. Yeah, but they have, I think this is where we started, where they have pressed what I understand to be an alternative argument that even if they can't get a cancellation based on indefiniteness before the board, the board should not have not relied on indefiniteness and not reaching the issue of 102 and 103. So they preserved, certainly, an alternative argument to the one you're arguing. They've argued that, but ex parte Lyle shows that for IPIXL indefinite, where those issues are there, that you do not reach the 102, 103 analysis. So there is not a special class of IPIXL indefiniteness issues that should be treated differently than every other kind of indefinite issues. They're opening a can of worms with that argument, I believe. Well, we've far exceeded your time. My understanding is you did not raise your cross appeal, which is absolutely fine. We can rely on the briefs, right? Yes, Your Honor. And therefore, we won't have to have you get up again to respond to that. A few quick points, Your Honors. First, on this issue of IPXL versus 112.6, the point we made is the board made two findings about indefiniteness, IPXL and 112.6. However, its rationale for not applying the prior art to claims one through four and eight was based solely on the 112.6 finding. And so then what was the point of the discussion of the indefiniteness question that precedes page 20 of the appendix? What's the point that they were getting at with that? I think the point they were getting at was they saw two defects in the claim. They saw an IPXL defect and they saw a 112.6 defect. Right, but the discussion of the first defect then was just sort of by the by. It was not something that had an effect on their ultimate decision not to adjudicate the 102, 103 issues. So, yes, but the reason for my answer is simple. We pressed them that they could apply the prior art to the IPXL indefiniteness issue and their reason for not doing that was, well, there's this other problem with 112.6. Because you haven't satisfied us on that, we don't need to reach the other analysis that we just rendered with respect to IPXL. That's a much more succinct and specific statement than the board made. The language such as, for example, left me wondering what it was an example of coming from a larger class. We certainly don't know from that four pages why they couldn't apply the prior art to the claims. They never provided any reasoning or analysis as to whether there was some ambiguity even under IPXL. Maybe they were just invoking the Lyle case. Except that they don't say that. In administrative law, we don't read into opinions, things that are not there. On the Lyle case, well, if we're going to be talking about board decisions in this area, in the PTAB world, we have hybrid media, which is a much more recent pronouncement in the area, where they do analyze the issue and found no issue with reaching it. It was not speculation. I would also add in the Lyle case, the board found the claims on patentable under 112. Here, we have this weird situation where the patentee is standing here, standing there, saying our claims have these defects in them. Don't construe them and find that the claims are actually patentable, which is ultimately the effect here of what they're arguing. They can't possibly be what Congress had in mind when it passed the AIA. One final point with respect to claims 1 through 4 and 8 compared to 11. If you look at the petition in this case that Samsung filed, I point to, for example, A213. We say Claim 11 includes the same limitations as Claim 1, but has written a method claim instead of an apparatus claim. So see our analysis for Claim 1 when looking at Claim 11. That was never disputed before the institution of the ACCA, and frankly, never disputed at any point in time. And the board, in its final written decision, if you look at page 830 and note 8, it notes this and uses the analysis of Claim 1 in finding Claim 11 unpatentable. So, plainly, the finding of Claim 11 is unpatentable using the analysis of Claim 1 is pretty powerful evidence that they were not speculating about what the elements of Claim 1 were. If the court has no further questions, that's all I have.  Thank you very much.  Thanks from the cases.